**In re Wilfred J. OLSEN, Jr., Maureen T. Olsen, Debtors.**

**No. 04 B 42333.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Aug. 28, 2006.

Susan G. Castagnoli, Law Offices of Susan G. Castagnoli PC, Naperville, IL, for Debtors.

**ORDER FINDING CIVIL CONTEMPT**

BRUCE W. BLACK, Bankruptcy Judge.

On July 28, 2006, an evidentiary hearing was held to resolve a motion filed by the

Chapter 13 Standing Trustee, Glenn Stearns, ("the Trustee") seeking to have Attorney Susan G. Castagnoli ("Attorney Castagnoli") held in civil contempt of court. The motion was filed May 11, 2006, and alleges that Attorney Castagnoli fraudulently altered a payoff letter issued by the Trustee's office concerning a proposed refinancing of the debtors' residence in order to collect an attorney fee which had not been authorized by the court. The motion alleges that the alteration prevented the debtors' plan from being paid in full from the proceeds of the refinancing and thus was a violation of the refinancing order entered July 8, 2005. Attorney Castagnoli has filed a response to the motion in which she admits that she is the attorney for the debtors and then invokes her rights under the Fifth Amendment to the Constitution of the United States regarding all other allegations in the motion.

The Trustee was represented at the hearing by Attorney Gerald Mylander. Attorney Castagnoli was not present, but she was represented by Attorney Thomas A. Else. After opening statements the Trustee presented evidence. Mr. Else's motion for a finding in favor of his client was denied at the close of the Trustee's evidence. Mr. Else then rested without presenting any evidence, and his renewed motion was also denied. Following arguments of counsel, the court announced its decision finding Attorney Castagnoli to be in civil contempt of court and promised a written decision before a hearing on sanctions to be held on August 11, 2006, at 1:15 p.m. The court ordered that Attorney Castagnoli be present for the sanctions hearing.

The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; 11 U.S.C. §§ 105 and 329; and the court's inherent powers to punish civil contempt and to regulate the conduct of attorneys appearing before it.

Now being fully advised in the premises, I find and conclude as follows.

## FINDINGS OF FACT

1. I take judicial notice of the following:

a. Attorney Castagnoli frequently appears in bankruptcy cases in this District.

b. She is a registrant in this District's electronic filing and case management system.

c. She filed the petition on behalf of the debtors in this case, and the electronic docket lists her fax number as "630–717–1596" and her email address as "susancastagnoli@scastagnolilaw. com."

d. The order entered herein on July 8, 2005, allowing the debtors to refinance their real estate was prepared by Attorney Castagnoli; and the second paragraph states, "The Chapter 13 Trustee will be paid in full from the proceeds of the refinance after payment of any mortgages, liens and usual and customary costs of sale [sic]."

e. The order entered herein on May 13, 2005, awarded Attorney Castagnoli fees of "$2,700.00, for legal services through conclusion of the case."

f. A standing order of this court provides for an election between two fee structures for debtor's attorneys in chapter 13 cases. One option provided (at the time) for a fee of $2,200 for representing a debtor through confirmation of a chapter 13 plan, with any fees for post-confirmation services in the case to be applied for separately on an itemized basis. The other option, which Attorney Castagnoli chose in this case, was for a higher fee of

$2,700 for providing services through the end of the case.

2. The Trustee's witnesses, Pam Peterson, Glenn Stearns, and Wilfred Olsen, Jr., were credible, and I believe their testimony.

3. Pam Peterson testified as follows: She is an attorney employed by the Trustee as a closing administrator. In the ordinary course of her duties, she received documents referencing the Olsen case which included a check for $26,164.00; exhibit D (the purported payoff letter); and the first page of exhibit E (the closing statement, or HUD–1 Statement). After she noticed that the check was not sufficient to pay off the chapter 13 plan in full, she notified the Trustee.

4. Glenn Stearns testified that he contacted Attorney Castagnoli by email after receiving the documents from Attorney Peterson. He authenticated exhibit G (the email correspondence). He also said that he eventually received a complete copy of the HUD–1 Statement, exhibit E.

5. Wilfred Olsen, Jr., one of the debtors, testified as follows:

a. Attorney Castagnoli telephoned the debtors prior to June of 2005 when the refinancing motion was filed to suggest that they consider refinancing. She told them that they would be able to put all their debt into one payment, the refinanced mortgage payment, and that the chapter 13 plan would be paid off. She did not mention any additional legal fees.

b. In November of 2005, Attorney Castagnoli told the debtors they had incurred additional legal fees of $8,500 for her work in keeping the mortgage lender from intervening in the case. Attorney Castagnoli never furnished a written bill for the additional fees.

c. The closing was held in Attorney Castagnoli's office, with Attorney Castagnoli attending by video conference for a portion of it. The debtors believed that the closing would result in their plan being paid in full and the additional attorney fees being paid. The debtors were very upset when they found out the plan had not been paid in full.

6. Exhibits A (the refinancing order entered July 8, 2005), B (a payoff letter dated July 19, 2005), C (an "updated" payoff letter dated March 14, 2006), and F (the fee order entered May 13, 2005) were admitted into evidence without objection pursuant to the pre-trial order.

7. Exhibits D (the allegedly altered, undated payoff letter), E (the closing statement), and G (the email correspondence) were admitted into evidence over objection during the hearing.

8. Exhibit B is a payoff letter for the debtors sent by the Trustee's office to Attorney Castagnoli, dated July 19, 2005. It refers to "a request dated June 23, 2005," the date Attorney Castagnoli filed the refinancing motion for the debtors. It states in bold print in all capital letters, "**A FULL AND LEGIBLE COPY OF THE HUD I STATEMENT MUST BE SUBMITTED TO THE TRUSTEE WITH THE FINAL PAYMENT.**"

9. Exhibit C is an updated payoff letter dated March 14, 2006. It does not refer to a request date. It states the payoff amount for the debtors' plan through April 15, 2006, to be $34,270.00.

10. Exhibit D appears to be an altered version of Exhibit B. It omits the date and a statement that "General unsecured claims will be paid 100%." It includes the reference to the June 23, 2005, request. The amount necessary to pay off the plan has been removed, and

a lower payoff amount, $26,164.00, and different expiration date, April 30, 2006, have been added. At the top of exhibit D is a partial fax header which contains the words "Castagnoli Lawyer" and a partial fax number which appears to be Attorney Castagnoli's fax number.

11. Exhibit E is the HUD-1 Statement for the debtors' refinancing. Line 1107 on page two of exhibit E is entitled "Attorney Fees to Susan G. Castagnoli" and contains an amount of $8,500.00.

12. The difference in the payoff amount in exhibit C, $34,270.00, and the payoff amount in exhibit D, $26,164.00, is $8,106.00. If Attorney Castagnoli had not received the $8,500.00 attorney fee from the proceeds of the refinancing, there would have been sufficient funds from the closing to submit the payoff amount stated in exhibit C to the Trustee.

13. Attorney Castagnoli knew, based on the fee order entered May 13, 2005, which she had prepared and her experience in chapter 13 cases, that she was not entitled to any additional fees in this case.

14. Attorney Castagnoli's failure to enclose the second page of exhibit E with the documents sent to the Trustee after the closing was an effort to hide the additional fee from the Trustee.

15. Exhibit G is a copy of a print-out of a series of emails between the Trustee and Attorney Castagnoli. In her April 18, 2006, 2:38 p.m. email, Attorney Castagnoli admits altering the payoff letter with the statement, "I corrected the math." She repeats this euphemistic admission in her emails dated April 21, 2006, (twice) and May 1, 2006.

16. Based on all of the above, I find that Attorney Castagnoli altered exhibit B thereby creating exhibit D in furtherance of a scheme to obtain an unautho-rized attorney fee at the closing of the debtors' refinancing.

17. Factual matters set forth in the Conclusions of Law will stand as additional Findings of Fact.

## CONCLUSIONS OF LAW

1. The Trustee has met his burden in this matter by proving Attorney Castagnoli's civil contempt by clear and convincing evidence.

2. The evidence presented is clear and convincing proof that Attorney Castagnoli fraudulently altered the Trustee's payoff letter as part of a scheme to collect an additional legal fee to which she was not entitled.

3. Although the Trustee's motion does not allege a violation of the fee order, Attorney Castagnoli's conduct clearly violated that order, and her failure to seek approval of any additional fees is persuasive proof of her fraudulent intent and bad faith.

## CONCLUSION

█ Attorney Castagnoli is found to be in civil contempt of court for violating the refinancing order entered herein on July 8, 2005.

The matter is continued to August 11, 2006, at 1:15 p.m. for a hearing to determine sanctions. Attorney Castagnoli is ordered to be present for the hearing.

## ORDER IMPOSING SANCTIONS ON ATTORNEY SUSAN G. CASTAGNOLI

On August 11, 2006, a hearing was held for the purpose of determining the appropriate sanctions to impose on Attorney Susan G. Castagnoli, who had previously been found to be in civil contempt of court. (See order entered August 8, 2006.)

The Chapter 13 Standing Trustee, Glenn Stearns ("the Trustee") was again represented by Attorney Gerald Mylander. Attorney Castagnoli appeared and was represented by Attorney Thomas A. Else. Prior to the hearing, Attorney Mylander filed an affidavit itemizing his services in the matter at 12.5 hours at $250 per hour, for a total of $3,125. Neither side presented evidence at the hearing, but Attorney Else stated that his client had tendered (a) $3,125 to the Trustee, and (b) $8,500 to the Olsens, that amount representing the fee that was improperly obtained at the closing of the refinancing of the debtors' real estate. Attorney Castagnoli declined to make any statement to the court.

Being fully advised in the premises, the court announced the following sanctions:

1. Attorney Castagnoli is ORDERED to pay the $3,125 to the Trustee and the $8,500 to the Olsens which she has already done.

2. Moreover, on or before August 30, 2006, Attorney Castagnoli is ORDERED to submit to the Trustee, for refund to the Debtors, the sum of $2,700 representing her fee as Debtors' attorney in this case.

3. Further, Attorney Castagnoli is ORDERED not to physically appear in Bankruptcy Court in Joliet, Illinois, for six months, beginning August 11, 2006.

4. Finally, this court will recommend to the Executive Committee of the District Court that Attorney Castagnoli be permanently removed from the list of attorneys authorized to practice in this District. It will be my further recommendation to the District Court that any request for reinstatement be preceded by her successful performance of 200 hours of *pro bono* legal services under the supervision of an appropriate legal service provider.

Copies of this order and the order entered August 8, 2006, will be sent to the District Court and the Illinois Attorney Registration and Disciplinary Commission.